XI1oWarm                    SEALED -- DO NOT DOCKET

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

            v.                      17 Cr. 556 (WHP)


GILBERT ARMENTA,

                                    Plea
            Defendant.

------------------------------x

                                    New York, N.Y.
                                    January 24, 2018
                                    4:45 p.m.


Before:

                HON. WILLIAM H. PAULEY III,

                                    District Judge


                        APPEARANCES

GEOFFREY S. BERMAN

        Interim United States Attorney for
        the Southern District of New York
CHRISTOPHER J. DiMASE
JULIETA LOZANO
        Assistant United States Attorneys

HUGHES HUBBARD & REED LLP
        Attorneys for Defendant
MARC A. WEINSTEIN
ELIZABETH PREWITT


Also Present:  Joseph Perry, U.S. Pretrial Services Office

1        (Case called)

2            THE COURT:  Good afternoon.  Please be seated.

3            MR. DiMASE:  Good afternoon, your Honor.  Christopher

4   DiMase, for the government.  Also present with me at counsel

5   table is Special United States Attorney Julieta Lozano, who is

6   cross-designated from the Manhattan District Attorney's Office

7   on this case, and Joe Perry from the United States Pretrial

8   Services Office.

9            THE COURT:  Good afternoon, Mr. DiMase.

10           MR. WEINSTEIN:  Good afternoon, your Honor.  I'm Marc

11  Weinstein, from Hughes Hubbard & Reed, on behalf of

12  Mr. Armenta.  With us is Ms. Prewitt, also from Hughes Hubbard

13  & Reed.

14           THE COURT:  Good afternoon to you, Mr. Weinstein.  And

15  I note the presence of the defendant, Mr. Armenta, at counsel

16  table.

17           Mr. DiMase, what's the status of this matter?

18           MR. DiMASE:  Your Honor, based on our conversations

19  with the defense, we understand the defendant is prepared to

20  enter a guilty plea to the superseding information today.

21           THE COURT:  Perhaps before we proceed with that, I

22  understand that there is a request by the government to modify

23  the conditions of his bail.

24           MR. DiMASE:  Yes, your Honor.

25           It should be obvious, but the request is contingent on

1    the guilty plea actually being finalized today.  I don't

2    anticipate any issues with the plea today.  I understand that

3    THE pretrial services office has a timing issue and would like

4    to address the GPS bracelet in particular at the outset of the

5    proceeding rather than later.  We're willing to make that

6    accommodation for the pretrial office.  Obviously, if there is

7    any problem with today's plea, we would immediately revisit

8    that bail modification, your Honor.

9             THE COURT:  All right.  For now, and to accommodate

10   the probation department, before we proceed further, given the

11   hour, I'm going to authorize Pretrial Services Officer Perry to

12   remove the anklet monitor from the defendant.

13            MR. DiMASE:  That's fine, your Honor.

14            THE COURT:  Without at this point determining that I

15   won't put it back on if something untoward happens during the

16   course of this proceeding.

17            MR. DiMASE:  Understood.

18            THE COURT:  You may proceed.

19            MR. PERRY:  Yes, sir.  Thank you, your Honor.

20            THE COURT:  All right.

21            Thank you, Officer.

22            MR. DiMASE:  And Judge, I just conferred with

23   Mr. Perry to request that he communicate that the bracelet has

24   been removed to the Florida pretrial officer that is also

25   engaged in monitoring the location of Mr. Armenta, so that no

1    accidental alarms are set off.  And I also understand that

2    pretrial's request is an order from the Court as soon as the

3    proceeding is over, or as soon as practicable, so that they can

4    get that order down to Florida as well.

5              THE COURT:  Fine.

6              Thank you.

7              MR. PERRY:  Thank you, sir.

8              THE COURT:  Have a good evening, Officer Perry.

9              MR. PERRY:  Good evening, sir.

10             THE COURT:  At this time, let's proceed with an

11   arraignment on the superseding information.

12             Mr. Armenta, would you stand, sir.

13             Are you the defendant, Gilbert Armenta?

14             THE DEFENDANT:  I am, your Honor.

15             THE COURT:  And have you seen the superseding

16   information?

17             THE DEFENDANT:  I have, your Honor.

18             THE COURT:  Have you discussed it with your attorney,

19   Mr. Weinstein?

20             THE DEFENDANT:  I have, your Honor.

21             THE COURT:  Do you waive my reading it word for word

22   here in open court?

23             THE DEFENDANT:  I do, your Honor.

24             THE COURT:  How do you plead to the charges of the

25   United States against you in the superseding information;

1  guilty or not guilty?

2            THE DEFENDANT:  Not guilty.

3            THE COURT:  Very well.  You may be seated.

4            Mr. Weinstein, I'm informed that the defendant has an

5  application.  What is that application?

6            MR. WEINSTEIN:  Yes, your Honor.

7            Based upon what I expect to be a knowing and voluntary

8  plea allocution, we would request that the defendant's plea be

9  changed to guilty from not guilty.

10            THE COURT:  All right.  Is this plea pursuant to a

11  plea agreement?

12            MR. WEINSTEIN:  It is, your Honor.

13            THE COURT:  All right.  The record should reflect that

14  a plea agreement has been handed up to me for inspection.

15            Mr. Weinstein, prior to the commencement of this

16  proceeding, did you review with your client an advice-of-rights

17  form?

18            MR. WEINSTEIN:  We did, your Honor.

19            THE COURT:  And did your client sign it in your

20  presence?

21            MR. WEINSTEIN:  Yes, your Honor.

22            THE COURT:  And did you sign it as his counsel?

23            MR. WEINSTEIN:  I did.

24            THE COURT:  The record should reflect that an

25  advice-of-rights form has been marked as Court Exhibit 1 and

1  || handed to me for inspection.

2  ||      At this time, I'm going to direct my deputy to

3  || administer the oath to Mr. Armenta.

4  ||           (Defendant sworn)

5  ||      THE COURT:  Mr. Armenta, do you understand, sir, that

6  || you're now under oath and that if you answer any of my

7  || questions falsely, your false or untrue answers may later be

8  || used against you in another prosecution for perjury or making a

9  || false statement?

10 ||      THE DEFENDANT:  I do, your Honor.

11 ||      THE COURT:  Very well.  Gentlemen, you may be seated.

12 ||      Pull the microphone toward you, Mr. Armenta.  And for

13 || the record, sir, what is your full name?

14 ||      THE DEFENDANT:  Gilbert, Richard Armenta.

15 ||      THE COURT:  How old are you, sir?

16 ||      THE DEFENDANT:  54 years old.

17 ||      THE COURT:  And how far did you go in school?

18 ||      THE DEFENDANT:  14 years.

19 ||      THE COURT:  And are you able to read, write, speak and

20 || understand English?

21 ||      THE DEFENDANT:  I do, sir, your Honor.

22 ||      THE COURT:  And are you now or have you recently been

23 || under the care of a doctor or psychiatrist?

24 ||      THE DEFENDANT:  No, your Honor.

25 ||      THE COURT:  Have you ever been treated or hospitalized

1   for any mental illness or any type of addiction, including drug

2   or alcohol addiction?

3             THE DEFENDANT:  Not hospitalized, no.

4             THE COURT:  Have you ever been treated for --

5             THE DEFENDANT:  I have, your Honor.

6             THE COURT:  And please describe for me the nature of

7   the treatments and for what.

8             THE DEFENDANT:  30 years ago, and it was for cocaine

9   addiction.

10            THE COURT:  Was that an outpatient treatment?

11            THE DEFENDANT:  Inpatient and outpatient both.

12            THE COURT:  And did you successfully complete the

13  program?

14            THE DEFENDANT:  I did, your Honor.

15            THE COURT:  And at any other time were you treated for

16  a narcotics addiction?

17            THE DEFENDANT:  No, your Honor.

18            THE COURT:  In the past 24 hours, have you taken any

19  drug, medicines or pills, or have you consumed any alcohol?

20            THE DEFENDANT:  No, your Honor.

21            THE COURT:  Is your mind clear today?

22            THE DEFENDANT:  It is.

23            THE COURT:  Are you feeling all right today,

24  Mr. Armenta?

25            THE DEFENDANT:  I'm feeling OK.  Thank you, your

1    Honor.

2          THE COURT:  Are you represented by an attorney here

3    today?

4          THE DEFENDANT:  I am represented by my two attorneys.

5          THE COURT:  And who is your attorney?

6          THE DEFENDANT:  Marc Weinstein.

7          THE COURT:  Mr. Weinstein, do you have any doubt as to

8    your client's competence to plead at this time?

9          MR. WEINSTEIN:  I do not.

10         THE COURT:  Now, Mr. Armenta, your attorney's informed

11   me that you wish to enter a plea of guilty.  Do you wish to

12   enter a plea of guilty?

13         THE DEFENDANT:  I do, your Honor.

14         THE COURT:  Have you had a full opportunity to discuss

15   your case with your attorney, Mr. Weinstein, and discuss the

16   consequences of entering a plea of guilty?

17         THE DEFENDANT:  I have, your Honor.

18         THE COURT:  Are you satisfied with your attorney,

19   Mr. Weinstein, and his representation of you in this matter?

20         THE DEFENDANT:  I am, your Honor.

21         THE COURT:  On the basis of Mr. Armenta's responses to

22   my questions and my observations of his demeanor here in my

23   courtroom this afternoon, I find that he's fully competent to

24   enter an informed plea at this time.

25         Before I accept any plea from you, Mr. Armenta, I'm

1   going to ask you certain questions.  My questions are intended

2   to satisfy me that you wish to plead guilty because you are

3   guilty, and that you fully understand the consequences of your

4   plea.   I'm going to describe to you certain rights that you

5   have under the Constitution and laws of the United States,

6   which rights you'll be giving up if you enter a plea of guilty.

7   Please listen carefully.  If you do not understand something I

8   am saying or describing, then stop me, and either I or your

9   attorneys will explain it to you more fully.

10                  Do you understand this, sir?

11                  THE DEFENDANT:   I do, your Honor.

12                  THE COURT:  Under the Constitution and laws of the

13  United States, you have a right to a speedy and public trial by

14  a jury on the charges against you which are contained in the

15  superseding information.

16                  Do you understand that?

17                  THE DEFENDANT:  I do, your Honor.

18                  THE COURT:  And if there were a trial, you would be

19  presumed innocent and the government would be required to prove

20  you guilty by competent evidence and beyond a reasonable doubt.

21  You would not have to prove that you were innocent at a trial.

22                  Do you understand that, sir?

23                  THE DEFENDANT:  I do, your Honor.

24                  THE COURT:  If there were a trial, a jury composed of

25  12 people selected from this district would have to agree

1   unanimously that you were guilty.

2           Do you understand that?

3           THE DEFENDANT:  I do, your Honor.

4           THE COURT:  If there were a trial, you would have the

5   right to be represented by an attorney, and if you could not

6   afford one, an attorney would be provided to you free of cost.

7           Do you understand that?

8           THE DEFENDANT:  I do, your Honor.

9           THE COURT:  If there were a trial, Mr. Armenta, you

10  would have the right to see and hear all of the witnesses

11  against you, and your attorney could cross-examine them.  You

12  would have the right to have your attorney object to the

13  government's evidence and offer evidence on your behalf if you

14  so desired, and you would have the right to have subpoenas

15  issued or other compulsory process used to compel witnesses to

16  testify in your defense.

17          Do you understand that?

18          THE DEFENDANT:  I do, your Honor.

19          THE COURT:  If there were a trial, you would have the

20  right to testify if you wanted to, but no one could force you

21  to testify if you did not want to.  Further, no inference or

22  suggestion of guilt could be drawn if you chose not to testify

23  at a trial.

24          Do you understand that?

25          THE DEFENDANT:  I do, your Honor.

1    THE COURT:  Do you understand, sir, that by entering a

2    plea of guilty today, you're giving up each and every one of

3    the rights that I've described, that you're waiving those

4    rights, and that you'll have no trial?

5        THE DEFENDANT:  I do, your Honor.

6        THE COURT:  Do you understand that you can change your

7    mind right now and refuse to enter this plea of guilty?

8        THE DEFENDANT:  I do, your Honor.

9        THE COURT:  You do not have to enter this plea if you

10   do not want to for any reason whatsoever.  Do you understand

11   this fully, Mr. Armenta?

12       THE DEFENDANT:  I do, your Honor.

13       THE COURT:  Once again, Mr. Armenta, have you received

14   a copy of the superseding information?

15       THE DEFENDANT:  Yes, your Honor.

16       THE COURT:  Have you read it?

17       THE DEFENDANT:  I have, your Honor.

18       THE COURT:  And did your attorney discuss the

19   superseding information with you?

20       THE DEFENDANT:  Yes, your Honor.

21       THE COURT:  Do you waive my reading the superseding

22   information word for word here in open court?

23       THE DEFENDANT:  I do, your Honor.

24       THE COURT:  Do you understand that Count One of the

25   superseding information charges you with a conspiracy to commit

1   wire fraud from in or about 2015 up to and including in or

2   about 2017, in violation of Title 18 of the United States Code,

3   Section 1349?

4              THE DEFENDANT:  I do, your Honor.

5              THE COURT:  Do you understand, sir, that Count Two of

6   the superseding information charges you with a conspiracy to

7   commit money laundering from in or about 2015 up to and

8   including in or about 2017, in violation of Title 18 of the

9   United States Code, Section 1956(h)?

10             THE DEFENDANT:  I do, your Honor.

11             THE COURT:  Do you understand that Count Three of the

12  superseding information charges you with a conspiracy to commit

13  money laundering in or about 2016, in violation of Title 18 of

14  the United States Code, Section 1956(h)?

15             THE DEFENDANT:  I do, your Honor.

16             THE COURT:  Do you understand, sir, that Count Four of

17  the superseding information charges you with conspiracy to

18  commit money laundering from at least in or about August 2015

19  up to and including in or about March 2017, in violation of

20  Title 18 of the United States Code, Section 1956(h)?

21             THE DEFENDANT:  I do, your Honor.

22             THE COURT:  And do you understand, sir, that Count

23  Five of the superseding information charges you with a

24  conspiracy to commit Hobbs Act extortion from at least in or

25  about November 2016 up to and including in or about September

1    2017, in violation of Title 18 of the United States Code,

2    Section 1951?

3              THE DEFENDANT:  I do, your Honor.

4              THE COURT:  Now, do you understand that you have a

5    constitutional right to be charged by an indictment rather

6    than, as in this case, a superseding information?

7              THE DEFENDANT:  I do, your Honor.

8              THE COURT:  An indictment, Mr. Armenta, would be from

9    a grand jury and not like the superseding information here,

10   simply a charge by the prosecutor.  Do you understand, sir,

11   that you've waived the right to be charged by an indictment and

12   that you've consented to being charged by a superseding

13   information by the government?

14             THE DEFENDANT:  I do, your Honor.

15             THE COURT:  Do you waive this right voluntarily and

16   knowingly?

17             THE DEFENDANT:  I do, your Honor.

18             THE COURT:  Do you understand, sir, that if you did

19   not plead guilty, the government would be required to prove

20   each and every part or element of the conspiracies charged in

21   the superseding information beyond a reasonable doubt?

22             THE DEFENDANT:  I do, your Honor.

23             THE COURT:  Mr. DiMase, for the benefit of the Court

24   and the defendant, would you describe the essential elements of

25   the charges in this information.

1          MR. DiMASE:  Yes, your Honor.

2          As the Court has already pointed out, all five counts

3     are conspiracy charges, so I'll lay out the elements of

4     conspiracy, I won't repeat them for each charge, and then I'll

5     talk about the objects of each of the conspiracies.

6          Count One is a wire fraud conspiracy under Section

7     1349.  The elements of conspiracy, which apply to all five

8     counts, are:

9          First, that the conspiracy or agreement between one or

10    more persons charged in the information existed.  And obviously

11    in each case, in each count there is a different object

12    alleged, but that there was an existing agreement or

13    understanding to commit the unlawful object or objects of the

14    conspiracy charged in the particular count;

15          And second, that the defendant knowingly became a

16    member of that conspiracy with intent to further its illegal

17    purpose; that is, with the intent to commit the objects or

18    assist in committing the objects of the charged conspiracy.

19          Turning to the objects of each of the five counts, the

20    first count has an object of substantive wire fraud, and the

21    elements of that crime are the existence of a scheme to defraud

22    or a scheme to defraud others of money or property by false or

23    fraudulent representations or promises;

24          Second, knowing participation in the scheme to defraud

25    with knowledge of its fraudulent nature and specific intent to

1  defraud;

2          And third, the use of interstate wires.

3          The second, third and fourth counts all charge

4  conspiracy to commit various money-laundering objects.  Under

5  Section 1956(h), the same general elements of conspiracy law

6  apply.

7          The first of the three counts, Count Two, charges

8  three different objects, and the other two counts charge a

9  single object, one of which is also the object of Count Two.

10          I'll start with Count Two.  The three objects are

11  essentially domestic concealment money laundering,

12  international concealment money laundering and international

13  promotional money laundering.

14          The elements of domestic concealment money laundering

15  are:

16          First, that the defendant knowingly conducted a

17  financial transaction;

18          Second, that the defendant knew the property involved

19  in the financial transaction was the proceeds of some form of

20  unlawful activity;

21          Third, that the financial transaction, in fact,

22  involved property constituting proceeds of a specified unlawful

23  activity;

24          And fourth, that the defendant acted with knowledge

25  that the transaction was designed to conceal or disguise the

1   nature, location, source, ownership or control of the proceeds.

2           The second object of Count Two is international

3   concealment money laundering, which is very similar.  The

4   elements of that offense are that the defendant transferred a

5   monetary instrument or funds from a place in the United States

6   to or through a place outside the United States, or to a place

7   in the United States from or through a place outside of the

8   United States;

9           Second, that the defendant did so with knowledge that

10  the monetary instrument or funds represented the proceeds of

11  some form of unlawful activity;

12          And third, that the defendant did so with knowledge

13  that the transfer was designed, in whole or in part, to conceal

14  or disguise the nature, location, source, ownership or control

15  of the proceeds of a specified unlawful activity.

16          And the third object of Count Two is international

17  promotional money laundering.  There are two elements to that

18  offense:

19          First, that the defendant transported a monetary

20  instrument or funds from a place in the United States to or

21  through a place outside the United States, or to a place in the

22  United States from or through a place outside of the United

23  States;

24          And second, that the defendant did so with the intent

25  to promote the carrying on of a specified unlawful activity.

XI1oWarm          SEALED -- DO NOT DOCKET

1      And to be clear about the alleged specified unlawful

2   activities for each count, under Count Two, the specified

3   unlawful activity is the wire fraud conspiracy and wire fraud

4   alleged in Count One of the information, and that is true of

5   all three objects of Count Two and the money-laundering offense

6   charged therein.

7      The specified unlawful activity alleged in Count Three

8   is a violation of Title 18, United States Code, Section -- give

9   me one moment, your Honor.

10      I withdraw that, your Honor.



20      As I said, Count Three involves an allegation of

21   promotional money laundering in furtherance of that specified

22   unlawful activity.



That covers the three money-laundering counts, your Honor.

The fifth and final count is a violation of Section 1951 of Title 18 of the United States Code, which is a Hobbs Act extortion. Again, it's a conspiracy count. The elements of the underlying object of the conspiracy, Hobbs Act extortion, are:

First, that the defendant wrongfully obtained the property of another, or attempted to do so; second, that the defendant obtained this property with the victim's consent but that this consent was compelled by the wrongful use or threat of force, violence or fear of injury or economic harm, whether immediate or in the future; and third, that as a result of the defendant's actions, interstate commerce or an item moving in interstate commerce was delayed, obstructed or affected in any way or degree.

I know that's a mouthful, but those are the essential elements of the crimes, your Honor.

1          THE COURT:  All right.

2          Mr. Armenta, have you listened closely to Assistant

3     United States Attorney DiMase as he's described the essential

4     elements of each of the five conspiracies charged in the

5     superseding information?

6          THE DEFENDANT:  I have, your Honor.

7          THE COURT:  And do you understand if you did not plead

8     guilty, the government would be required to prove all of those

9     elements by clear evidence and beyond a reasonable doubt in

10    order to convict you?

11         THE DEFENDANT:  I do, your Honor.

12         THE COURT:  Now, do you understand that the maximum

13    possible penalty for the wire fraud conspiracy charged in Count

14    One to which you're entering a plea of guilty is 20 years of

15    imprisonment; followed by a maximum term of three years of

16    supervised release; together with a maximum fine of the

17    greatest of $250,000, or twice the gross pecuniary gain derived

18    from the offense or twice the gross pecuniary loss to persons

19    other than yourself resulting from the offense; and a mandatory

20    $100 special assessment?

21         Do you understand that?

22         THE DEFENDANT:  I do, your Honor.

23         THE COURT:  Supervised release means that you will be

24    subject to monitoring when you are released from prison, the

25    monitoring to be under terms and conditions which would lead to

1  reimprisonment without a jury trial for all or part of the term

2  of supervised release without credit for time previously served

3  on postrelease supervision if you violate the terms and

4  conditions of supervised release.

5          Do you understand that?

6          THE DEFENDANT:  I do, your Honor.

7          THE COURT:  Do you understand that the maximum

8  possible penalty for each of the three money-laundering

9  conspiracies that are charged in Counts Two, Three and Four,

10  and to which you're entering a plea of guilty, is 20 years of

11  imprisonment on each count; followed by a maximum term of three

12  years of supervised release on each count; together with a

13  maximum fine of the greatest of $500,000, or twice the value of

14  the property involved in the transaction or twice the value of

15  the monetary instrument involved in the transportation,

16  transmission or transfer, whichever is greatest, on each count;

17  and a mandatory $100 special assessment on each count?

18          Do you understand that?

19          THE DEFENDANT:  I do, your Honor.

20          THE COURT:  Finally, do you understand that the

21  maximum possible penalty for the Hobbs Act extortion conspiracy

22  charged in Count Five is 20 years of imprisonment; followed by

23  a maximum term of three years of supervised release; together

24  with a maximum fine of the greatest of $250,000, or twice the

25  gross pecuniary gain derived from the offense or twice the

1   gross pecuniary loss to persons other than yourself resulting

2   from the offense; and a mandatory $100 special assessment?

3           Do you understand that?

4           THE DEFENDANT:  I do, your Honor.

5           THE COURT:  Do you understand now that you are

6   entering a plea to five different counts in the superseding

7   information and that you'll be separately sentenced on each of

8   those counts?

9           THE DEFENDANT:  I do, your Honor.

10          THE COURT:  And do you further understand that I may

11  order you to serve the sentences either concurrently or

12  consecutively, meaning either together or one after the other?

13          THE DEFENDANT:  I do, your Honor.

14          THE COURT:  And do you understand that if I decide to

15  run the sentences consecutively, your sentence could be a

16  maximum total of 100 years of imprisonment?

17          THE DEFENDANT:  I do, your Honor.

18          THE COURT:  Are you a citizen of the United States?

19          THE DEFENDANT:  I am, your Honor.

20          THE COURT:  All right.  Do you understand that if I

21  accept your guilty plea and adjudge you guilty, that

22  adjudication may deprive you of valuable civil rights, such as

23  the right to vote, the right to hold public office, the right

24  to serve on a jury and the right to possess any kind of

25  firearm?

1      THE DEFENDANT:  I do, your Honor.

2      THE COURT:  Do you understand that in addition to the

3  penalties that I have discussed with you, as part of your

4  agreement with the government, you are admitting the forfeiture

5  allegations with respect to Counts One through Four of the

6  superseding information and agreeing to forfeit to the United

7  States any and all property, real and personal, that

8  constitutes or is derived from proceeds traceable to the

9  commission of those offenses alleged in the superseding

10  information?

11      Do you understand that?

12      THE DEFENDANT:  I do, your Honor.

13      THE COURT:  Do you also understand that you will be

14  subject to an order of restitution in this case in an amount to

15  be determined by the Court?

16      THE DEFENDANT:  I do, your Honor.

17      THE COURT:  Do you also understand as part of this

18  agreement that you are agreeing, at least two weeks prior to

19  sentencing, to file with the IRS and provide copies to the

20  United States Attorney's Office accurate amended tax returns

21  for the years 2015 through 2017, and will pay or enter into an

22  agreement to pay past taxes due and owing, including applicable

23  penalties, to the Internal Revenue Service?

24      THE DEFENDANT:  I do, your Honor.

25      THE COURT:  Do you also understand as part of your

1    agreement that with respect to the money-laundering

2    conspiracies charged in Counts Three and Four of the

3    superseding information, you are agreeing to prosecution in the

4    Southern District of New York and agreeing to waive any defense

5    that you may have based on venue; namely, that this is not the

6    appropriate district in which to charge you with these crimes?

7          Do you understand that?

8          THE DEFENDANT:  I do, your Honor.

9          THE COURT:  And do you knowingly and voluntarily agree

10   to waive venue?

11         THE DEFENDANT:  I do, your Honor.

12         THE COURT:  Now, have you talked with your attorney

13   about the sentencing guidelines?

14         THE DEFENDANT:  I have, your Honor.

15         THE COURT:  And do you understand that this Court will

16   not be able to determine your sentence until after a

17   presentence report has been completed by the probation office

18   and you and the government have had a chance to challenge any

19   of the facts reported by the probation office?

20         THE DEFENDANT:  Yes, I do, your Honor.

21         THE COURT:  Do you understand that if you're sentenced

22   to prison, parole has been abolished and you will not be

23   released any earlier on parole?

24         THE DEFENDANT:  I do, your Honor.

25         THE COURT:  Do you understand, sir, that if your

1    attorney or anyone else has attempted to estimate or predict

2    what your sentence will be, their estimate or prediction could

3    be wrong?

4              THE DEFENDANT:  I do, your Honor.

5              THE COURT:  No one, Mr. Armenta, not even your

6    attorney or the government, can nor should give you any

7    assurance of what your sentence will be.  Your sentence cannot

8    be determined until after the presentence report is completed

9    and I've ruled on any challenges to the report and determined

10   what sentence I believe is appropriate, giving due regard to

11   all of the factors set forth in Section 3553(a).

12             Do you understand that?

13             THE DEFENDANT:  I do, your Honor.

14             THE COURT:  Do you also fully understand that even if

15   your sentence is different from what your attorney or anyone

16   else told you it might be, or if it's different from what you

17   expect, you will still be bound to your guilty plea and you

18   will not be allowed to withdraw your plea of guilty?

19             THE DEFENDANT:  I do, your Honor.

20             THE COURT:  Now, earlier, I was handed this plea

21   agreement.  Have you signed it?

22             THE DEFENDANT:  I have, your Honor.

23             THE COURT:  And did you read this agreement prior to

24   signing it?

25             THE DEFENDANT:  I have, your Honor.

1    THE COURT:  And did you discuss it with your attorney

2    before you signed it?

3    THE DEFENDANT:  I have, your Honor.

4    THE COURT:  Did you fully understand this agreement,

5    Mr. Armenta, at the time that you signed it?

6    THE DEFENDANT:  I fully agree with the agreement.

7    THE COURT:  Does this letter agreement constitute your

8    complete and total understanding of the entire agreement among

9    the government, your attorney and you?

10   THE DEFENDANT:  Yes, it does, your Honor.

11   THE COURT:  Is everything about your plea and sentence

12   contained in this agreement?

13   THE DEFENDANT:  It is, your Honor.

14   THE COURT:  Has anything been left out?

15   THE DEFENDANT:  No, your Honor.

16   THE COURT:  Has anyone offered you any inducements or

17   threatened you or forced you to plead guilty or to enter into

18   the plea agreement?

19   THE DEFENDANT:  No, your Honor.

20   THE COURT:  Do you understand that I'm completely free

21   to disregard any position or recommendation by your attorney or

22   by the government as to what your sentence should be and that I

23   have the ability to impose whatever sentence I believe is

24   appropriate under the circumstances and that you'll have no

25   right to withdraw your plea?

1          THE DEFENDANT:  I do, your Honor.

2          THE COURT:  Mr. Weinstein, do you know of any valid

3     defense that would prevail at trial?

4          MR. WEINSTEIN:  No, your Honor.

5          THE COURT:  Mr. Weinstein, do you know of any reason

6     why your client should not be permitted to plead guilty?

7          MR. WEINSTEIN:  I do not.

8          THE COURT:  Mr. Weinstein, is there an adequate

9     factual basis to support this plea of guilty?

10          MR. WEINSTEIN:  There is.

11          THE COURT:  Mr. DiMase, is there an adequate factual

12     basis to support this plea of guilty?

13          MR. DiMASE:  Yes, your Honor.

14          And if I may ask the Court to just repose one

15     question?  It's a minor point, but I think when you asked if he

16     fully understood all of the terms of the agreement, I think

17     Mr. Armenta's response was "I agree with the agreement"; just

18     to make sure that he indicates he fully understands its terms.

19          THE COURT:  Right.

20          Mr. Armenta, do you understand each and every term set

21     forth in the plea agreement?

22          THE DEFENDANT:  Yes, I do, your Honor.

23          THE COURT:  All right.

24          MR. DiMASE:  Thank you, your Honor.

25          THE COURT:  Very well then.

1    Mr. Armenta, please tell me what you did in connection

2   with each of the crimes to which you're entering a plea of

3   guilty.

4    THE DEFENDANT:  On Count One, in 2015, I began doing

5   business with OneCoin, through my company.  I came to

6   understand that OneCoin was making false statements in order to

7   get people to purchase OneCoin packages or prevent people who

8   had purchased these packages to seek their money back.

9    After knowing this, I continued to do things to assist

10   OneCoin's business, such as by coordinating the opening up of

11   new accounts for OneCoin to receive customers' funds,

12   international wires were used in connection with this activity,

13   and including the transfer of money through corresponding bank

14   accounts in New York.

15    THE COURT:  And at that time, did you understand what

16   you were doing was wrong and illegal?

17    THE DEFENDANT:  Yes.

18    THE COURT:  Please tell me what you did in connection

19   with the money-laundering conspiracy charged in Count Two.

20    THE DEFENDANT:  In Count Two, with knowledge of the

21   fraud discussed for Count One, I caused international wire

22   transfers to be transferred -- I'm sorry, to be made of money

23   that was proceeds from unlawful activity, concealed the

24   ownership of the funds, and promote the continuation of the

25   fraud.  International wires were used in connection with this

1  activity, including the transfer of money to and through a

2  corresponding bank in New York.

3          THE COURT:  And did you agree with others to engage in

4  that money laundering that you've just described?

5          THE DEFENDANT:  I did, your Honor.

6          THE COURT:  And here again, did you understand that

7  what you were doing was wrong and illegal?

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  Please tell me what you did with respect

10  to the money-laundering conspiracy charged in Count Three.

11          Mr. DiMase.

12          MR. DiMASE:  Just on Count Two, I don't know that

13  Mr. Armenta specified the dates of that conduct.

14          THE COURT:  When did you enter into that conspiracy?

15          (Counsel and defendant conferred)

16          THE DEFENDANT:  In about 2015.

17          THE COURT:  And how long were you involved with that?

18          THE DEFENDANT:  Until approximately 2017.

19          THE COURT:  All right.

20          MR. DiMASE:  May I have one moment to consult with

21  Mr. Armenta's attorney?

22          THE COURT:  Yes.

23          MR. DiMASE:  Thank you.

24          Judge, just one other, very minor matter on Count Two.

25  I think the allocution clearly satisfies the international and

1   domestic concealment objects of that conspiracy and, likely,

2   also the promotional money-laundering aspect, but I think the

3   only word Mr. Armenta used in connection with that aspect of

4   the conspiracy was to "promote" fraud, and I would just ask the

5   Court to inquire as to what sort of payments were made to

6   promote the fraud.  I think Mr. Armenta is prepared to answer

7   that.

8           THE COURT:  What did you do to promote the fraud,

9   Mr. Armenta?

10          THE DEFENDANT:  By, by allowing the commissions to be

11  paid.

12          THE COURT:  All right.

13          Anything further on that point, Mr. DiMase?

14          MR. DiMASE:  No, your Honor.  Facilitating the payment

15  of commissions is sufficient here.  Thank you.

16          THE COURT:  All right.

17          Please tell me, Mr. Armenta, what you did in

18  connection with the money-laundering conspiracy charged in

19  Count Three.

20

21

22

23

24

25

1          With respect to this count, I agreed to way my venue

2     for the filing of this charge in this district.

3          THE COURT:  And with respect to this conspiracy, did

4     you understand at the time that the agreement you entered into

5     was illegal and wrong?

6          THE DEFENDANT:  Yes, your Honor.



18         THE COURT:  All right.

19         MR. DiMASE:  That's sufficient, your Honor.  Thank

20    you.

21         THE COURT:  Please tell me what you did in connection

22    with the money-laundering conspiracy charged in Count Four.

To the extent that the conduct did not involve the
Southern District of New York, I agreed to waive the venue for
the filing of this charge in this district.

THE COURT:  And once again, when you agreed with
others to commit this money laundering, did you understand what
you were doing was wrong and illegal?

THE DEFENDANT:  I did, your Honor.

THE COURT:  All right.  Please tell me what you did in

1   connection with the Hobbs Act extortion conspiracy charged in

2   Count Five.

3             THE DEFENDANT:  From late 2016 and '17, I agreed with

4   others to attempt to collect from a person in the United

5   Kingdom money I believed that a person had stolen and agreed

6   that the others would use threats of physical harm, if

7   necessary, to collect the money.  The money was millions of

8   dollars, and I expected it to be sent back to a business

9   account by international wire transfer.

10            I understand as part of this activity, at least one

11  telephone call was made from New York.

12            THE COURT:  And here again, when you agreed with

13  others to engage in this conspiracy, did you understand what

14  you were doing was wrong and illegal?

15            THE DEFENDANT:  I did, your Honor.

16            THE COURT:  All right.

17            Mr. DiMase, would the government briefly summarize its

18  evidence against the defendant with respect to each of these

19  crimes.

20            MR. DiMASE:  Your Honor, I can summarize in broad

21  strokes.

22            The government was engaged in a lengthy investigation

23  in which it gathered the following different types of evidence,

24  which it would introduce at any trial were Mr. Armenta to

25  proceed to trial:  Probably most important, email evidence,

1  including at least four different accounts utilized by

2  Mr. Armenta, pursuant to search warrants, along with email

3  accounts of other individuals he worked with and other

4  coconspirators in the case;

5        Phone evidence, including WhatsApp messages and other

6  messages, and other content of phones that Mr. Armenta

7  possessed;

8        Audio recordings of the defendant engaged in some of

9  the charged offenses;

10        Also video recordings of the defendant;

11        The defendant's own statements, to include statements

12  he made to agents after his arrest in this case;

13        Voluminous bank records and substantial financial

14  analysis of those and tracing of those records to demonstrate

15  the movements of moneys throughout his accounts and other

16  accounts around the world;

17        An undercover operation specifically into the OneCoin

18  scheme;

19        Phone records showing Mr. Armenta's contact with

20  various coconspirators;

21        And phone recordings that were actually made by the

22  defendant himself following his arrest with certain of his

23  coconspirators.

24        In addition to the email accounts, there were also

25  certain Dropbox and Skype accounts from which evidence was

1 obtained;

2    And on top of all that, in the course of the

3 investigation, there were numerous witness interviews and

4 debriefings regarding the conduct of Mr. Armenta and others

5 engaged in the scheme.

6    I would just note specifically two points that are

7 worth specifically clarifying.

8    With respect to the wire fraud scheme and venue, I

9 think that Mr. Armenta's indication that New York-correspondent

10 accounts were used as part of the scheme is sufficient to place

11 venue in this district, but I would add that the government

12 would also present evidence that there were OneCoin members who

13 were sold on this OneCoin concept located within the Southern

14 District of New York, and the New York City area as well.

15    And with respect to Count Five, two issues:

16    On venue, I think, again, the fact that a phone call

17 was made from this district in furtherance of that is

18 sufficient.

19    I would add that there were also payments made from a

20 account located in New York in furtherance of that offense.

21    And with respect to the international or interstate

22 commerce element of Count Five, the government's argument would

23 be that the expectation that a multimillion-dollar wire

24 transfer made as a result of a successful extortion scheme

25 infused back into the businesses of either Mr. Armenta or

1    OneCoin bank accounts establishes the necessary effect on

2    interstate or international commerce to support that count.

3           That is, in broad strokes, the evidence the government

4    would submit at trial to prove the defendant guilty of these

5    crimes.

6           THE COURT:  Thank you, Mr. DiMase.

7           On Count Five, Mr. Armenta, in your allocution, you

8    said that a phone call emanated from New York.  Can you be any

9    more specific?  Manhattan, the Southern District?

10          THE DEFENDANT:  It would be in Manhattan, sir --

11          THE COURT:  All right.

12          THE DEFENDANT:  -- your Honor.

13          THE COURT:  All right.

14          MR. DiMASE:  And to be clear, your Honor, the bank

15   account I mentioned in the government's proffer was also

16   located at a bank in Manhattan, and funds were dispensed from

17   that account.

18          THE COURT:  As you spoke on the issue, I was thinking

19   back to what he said, and he said New York.  Now it's clear

20   that it's also the Southern District of New York.

21          MR. DiMASE:  Very good.  Thank you, Judge.

22          THE COURT:  Mr. Armenta, at this time I'd ask that you

23   stand.

24          Mr. Armenta, how do you now plead to the charge in

25   Count One of the information; namely, conspiracy to commit wire

1  fraud from in or about 2015 up to and including in or about

2  2017, in violation of Title 18 of the United States Code,

3  Section 1349; guilty or not guilty?

4              THE DEFENDANT:  Guilty, your Honor.

5              THE COURT:  How do you plead to the charge in Count

6  Two of conspiring to commit money laundering from in or about

7  2015 up to and including in or before 2017, in violation of

8  Title 18 of the United States Code, Section 1956(h); guilty or

9  not guilty?

10             THE DEFENDANT:  Guilty, your Honor.

11             THE COURT:  How do you plead to the charge in Count

12 Three of conspiring to commit money laundering in or about

13 2016, in violation of Title 18 of the United States Code,

14 Section 1956(h); guilty or not guilty?

15             THE DEFENDANT:  Guilty, your Honor.

16             THE COURT:  And how do you plead to the charge in

17 Count Four of the information of conspiring to commit money

18 laundering from at least August 2015 up to and including in or

19 about March 2017, in violation of Title 18 of the United States

20 Code, Section 1956(h); guilty or not guilty?

21             THE DEFENDANT:  Guilty, your Honor.

22             THE COURT:  Finally, how do you plead to the charge in

23 Count Five of conspiring to commit Hobbs Act extortion from at

24 least in or about November 2016 up to and including in or about

25 September 2017, in violation of Title 18 of the United States

1     Code, Section 1951; guilty or not guilty?

2                 THE DEFENDANT:  Guilty, your Honor.

3                 THE COURT:  Are you pleading guilty to each of these

4     crimes because you are guilty?

5                 THE DEFENDANT:  Yes, your Honor.

6                 THE COURT:  Are you pleading guilty voluntarily and of

7     your own free will?

8                 THE DEFENDANT:  I am, your Honor.

9                 THE COURT:  Mr. Weinstein, do you wish me to make any

10    further inquiries of your client?

11                MR. WEINSTEIN:  I don't, your Honor.

12                May I make one statement for the record?

13                THE COURT:  You may.

14                MR. WEINSTEIN:  Thank you.

15                Just with respect to Mr. DiMase's recitation of the

16    various forms of evidence that he would use if this were to

17    have gone to trial, which I'm not disputing, he had mentioned a

18    long-running investigation where they gathered some of this

19    evidence on some of these charges before Mr. Armenta was

20    arrested.  Again, not disputing, but just so the Court is

21    aware, two of the five charges that Mr. Armenta is pleading

22    guilty to today were ones that I don't believe were on the

23    radar of the government as a result of that investigation.  It

24    was brought to their attention through his cooperation efforts.

25    I just want to make sure that -- I know that's more of a

1    sentencing issue, but that the Court is aware of that going

2    forward.

3           THE COURT:  All right.  I take it that's Counts Three

4    and Four.

5           MR. WEINSTEIN:  It is, your Honor.

6           THE COURT:  Very well.

7           Mr. DiMase, does the government wish me to make any

8    further inquiries of the defendant?

9           MR. DiMASE:  No, your Honor.  Thank you very much.

10          THE COURT:  Mr. Armenta, because you acknowledge that

11   you are guilty as charged in the superseding information, and

12   because I find you know your rights and are waiving them

13   knowing and voluntarily, and because I find your plea is

14   entered knowingly and voluntarily and is supported by an

15   independent basis in fact containing each of the essential

16   elements of each of the five conspiracies, I accept your guilty

17   plea and adjudge you guilty of each of the crimes to which you

18   have just pleaded.

19          You may be seated.

20          Now, the U.S. Probation Office will next prepare a

21   presentence report to assist me in sentencing you.  You'll be

22   interviewed by the probation office.  It's important that the

23   information you give the probation officer be truthful and

24   accurate, because the report is important in my decision as to

25   what your sentence will be.  You and your attorney have a right

1    and will have an opportunity to examine the report, challenge

2    or comment upon it, and to speak on your behalf before

3    sentencing.

4           Given the nature of the agreement here between the

5    parties, I will fix a control date of April 20, 2019 -- 2018,

6    at 3 p.m.  When it becomes clear to the government that that

7    date may not be feasible, please notify my deputy.

8           MR. DiMASE:  Judge, you said 2019 first and then 2018

9    second.  I think April would be, April 2018 would be less than

10   three months from now, which I think would be a short time

11   frame even for --

12          THE COURT:  I think you're right.

13          MR. DiMASE:  And I don't anticipate at this time being

14   prepared at that early of a date.

15          THE COURT:  Right.

16          MR. DiMASE:  So we would ask for a longer date.

17          THE COURT:  All right.  Let's put it down for July 20,

18   as a control date.  Does that make sense?

19          MR. WEINSTEIN:  Your Honor, it makes sense as a

20   control date, although I think realistically, not just this

21   type of agreement, but given some of the activities that

22   Mr. Armenta is going to be assisting with the government going

23   forward, I think it's highly unlikely.  I would request if you

24   could put a later control date, but I understand if the Court

25   wants to set it.

1    THE COURT:  I just don't like to lose track of things,

2   and sometimes things can get lost.  If we have a control date,

3   we can always move it to another date.  It's a reminder to me

4   that I have the Armenta case and that Mr. Armenta needs to be

5   sentenced at some point.

6          MR. WEINSTEIN:  Fine, your Honor.

7          THE COURT:  All right.  July 20, just as a control, at

8   2:00.

9          Now, what's the bail status of the defendant, and what

10  application does the government have with respect to that

11  status, Mr. DiMase?

12         MR. DiMASE:  Thank you, your Honor.  Yes.

13         If you refer to page 5 of the agreement, the footnote

14  at the bottom, footnote 1, lays out the current bail status,

15  and I will make the application, but the essential terms of the

16  bail modification request are contained in the second full

17  paragraph on that page.

18         THE COURT:  Just for the purpose of the record, why

19  don't you make your application.

20         MR. DiMASE:  Yes, your Honor.

21         Your Honor, we are seeking to, both parties are in

22  agreement to seek a proposed bail package, modified bail

23  package, which would include the following.

24         Obviously we've already had the GPS device removed at

25  the outset of this proceeding today.  We'd also respectfully

1   request that the curfew condition be lifted; that Mr. Armenta

2   be allowed unrestricted travel within the continental United

3   States, to be distinguished from the earlier bail condition

4   requiring travel only within the Southern and Eastern Districts

5   of New York, the District of New Jersey and the Southern

6   District of Florida.

7        And also, international travel permitted only with

8   preapproval from the United States Attorney's Office.

9        The other conditions -- namely, the $5 million bond

10  secured with $500,000 of cash and mortgage deeds executed on

11  his primary and secondary residences in Florida, and ongoing

12  pretrial supervision -- would remain the same.

13       We did briefly discuss the passport issue.  I think

14  it's premature to return the passport at this point.  If and

15  when international travel is permitted, obviously Mr. Armenta

16  will be provided with his passport to engage in that travel,

17  but that is the proposed bail modification request, your Honor.

18       THE COURT:  All right.

19       MR. WEINSTEIN:  I'm sorry, your Honor.  May I just add

20  one thing on that last point?

21       THE COURT:  Yes, Mr. Weinstein.

22       MR. WEINSTEIN:  To the extent that, I just want to

23  make sure we don't need to burden the Court unnecessarily.  If

24  there are times where the government is going to approve

25  international travel, which obviously would require the

1   passport, can we just make the return of the passport a

2   condition that just needs the approval of the government as

3   well as opposed to needing to involve the Court in that

4   process?

5            THE COURT:  Pretrial services probably takes its

6   direction from the Court, not the U.S. Attorney's Office.

7            MR. DiMASE:  Judge, may I propose that when this issue

8   becomes ripe, at that point we can submit a letter to the

9   Court, asking for permission --

10           THE COURT:  Right.

11           MR. DiMASE:  Not permanent permission, obviously.

12           THE COURT:  I was going to say that I would approve

13  all of these conditions with the added caveat that this Court

14  be notified by letter when there has been a request that the

15  office is approving for international travel, and I think

16  that's the mechanism to best fulfill that so that I am kept

17  abreast of what's happening with Mr. Armenta.

18           MR. DiMASE:  Yes, your Honor.

19           THE COURT:  I will grant the government's application

20  with that additional modification.

21           Anything further at this time?

22           MR. WEINSTEIN:  No, your Honor.

23           MR. DiMASE:  No, your Honor.  Thank you.

24           THE COURT:  Very well.  This matter is concluded.

25  Have a good evening.

1       MR. DiMASE:  Thank you, Judge.

2       MR. WEINSTEIN:  Thank you.

3       THE COURT:  Be seated.

4       Yes, counsel.  Is there another application?

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23       MR. DiMASE:  No.  Thank you.

24       THE COURT:  Once again, have a great evening.

25       (Adjourned)