

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

July 7, 2020

**BY ELECTRONIC MAIL & ECF**

Honorable Edgardo Ramos
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:    *United States* **v.** *Gilbert Armenta*, **17 Cr. 556 (ER)**

Dear Judge Ramos:

      The Government respectfully submits this letter in response to defendant Gilbert Armenta's request that the sentencing in this case, which is currently scheduled for July 23, 2020, be conducted via video conference. The Government submits that the standard for a video conference sentencing as set forth in the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") is not met here, and respectfully requests that the Court adjourn the sentencing to the earliest available date on which the Court anticipates that an in-person sentencing proceeding can be conducted.

      The CARES Act provides that, subject to certain requirements, video teleconferencing and telephone conferencing may be used in criminal proceedings during the COVID-19 pandemic. With respect to felony pleas and sentencing hearings, Section 15002(b) of the CARES Act allows for the proceeding to be held via video teleconferencing and telephone conferencing when the district judge "in a particular case finds for specific reasons that the plea or sentencing in that case cannot be further delayed without serious harm to the interests of justice." *See also* 20 Misc. 176 (CM), SDNY Standing Order No. M10-468 (authorizing the use of video or telephone conferencing for felony pleas under Rule 11 and felony sentencings under Rule 32 only upon a finding by the presiding judge that the "proceeding cannot be further delayed without serious harm to the interests of justice.") (Mar. 30, 2020).

      Sentencing in this case at this time does not satisfy the standard for video conferencing required by the CARES Act. Notably, the CARES Act requires both the consent of the defendant and a finding by the Court that there are "specific reasons" that further delay would cause "serious harm to the interests of justice." No such specific reasons are apparent here. The defendant states that he is experiencing "uncertainty and stress" during the pendency of this case, but these are circumstances experienced to some degree by every criminal defendant. If a defendant's "uncertainty and stress" about the conclusion of his case constituted "serious harm to the interests of justice," then the CARES Act would essentially permit any sentencing to proceed remotely

upon request of the defendant. Here, the defendant has been released on bail conditions pending sentence,[1] appears highly unlikely to receive a sentence of time served in light of the facts and circumstances of his case,[2] and is a U.S. citizen who faces no adverse immigration consequences as a result of his plea and sentencing in this case.[3] Accordingly, in light of the high standard that must be met under the CARES Act, the Government respectfully submits that there are no particular facts present here that would require sentencing to proceed by video conference in July 2020.[4] *See, e.g., United States v. Harald Joachim von der Goltz*, 18 Cr. 693 (RMB), Dkt. No. 230 (June 30, 2020) (denying defense request to conduct videoconference sentencing); *United States v. Jonathan Richardson and Dion Micken*s, 18 Cr. 657 (ALC), Dkt. No. 151 (July 7, 2020) (adjourning sentencing to September 2020 over defense objection); *United States v. Rondel Brandon*, 19 Cr. 644 (GBD), Dkt. Nos. 24-26 (June 8, 2020) (adjourning sentencing over initial defense objection); *United States v. Bravo*, 18 Cr. 283 (GHW), transcript of June 11, 2020 pretrial conference, attached hereto as Exhibit A, at 10-11 (rejecting defendant's request to conduct plea proceeding by video conference, because the defendant's "reasonable preference to begin the process of putting this case behind him" was insufficient to permit the Court to make the "requisite finding" under the CARES Act).

Nor is the delay at issue in this case exceptional. The defendant's sentencing proceeding was first scheduled to proceed only one month ago, on June 3, 2020. While the COVID-19 pandemic has caused a temporary delay in sentencing, which is currently scheduled to take place on July 23, this delay has not been significantly far out of the ordinary at this point. Last week,

---

[1] The defendant refers to the condition of release prohibiting him from "running or managing any business entity," along with his involvement in "any financial transaction associated with any business entity." That condition was imposed by the Court based on information provided by the Government demonstrating that the defendant had used his companies to engage in additional criminal activity while subject to the terms of a cooperation agreement with the Government ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

[2] As set forth in the Presentence Investigation Report ("PSR"), the OneCoin wire fraud scheme involved losses of over $550 million, and the defendant was personally involved in the laundering of more than $300 million in OneCoin fraud proceeds. Based on those facts, among others, he faces a total offense level of 43 and a resulting applicable sentencing Guidelines range of 100 years' imprisonment.

[3] In this important respect, Armenta is differently situated from the defendant in *United States v. Cohen*, 19 Cr. 741 (WHP), cited in Armenta's letter. In *Cohen*, Judge Pauley specifically noted that the defendant was a "French national" whose "immigration status and employment" were "in limbo until he complete[d] his sentence." *See Cohen*, 19 Cr. 741, Dkt. No. 41, at 4 (May 19, 2020).

[4] Moreover, even assuming the defendant's sentencing proceeds remotely, the Government believes that the defendant will seek a delayed surrender for the service of any custodial sentence until the COVID-19 pandemic recedes. Indeed, the Government has in certain cases agreed to delayed surrenders under these unique circumstances. Thus, even if sentencing proceeds remotely, the defendant may remain subject to the same bail conditions he complains of now pending his surrender.

2

the Chief Judge of this District issued a standing order describing the progress on the Court's Reentry Plan for resuming court operations, noting that Phase I of the Reentry Plan commenced on June 15.  20 Misc. 196 (CM), SDNY Standing Order No. M10-468 (June 12, 2020).  The order further states that Phase II of New York City's reopening plan is anticipated in July, with further reopening anticipated should health conditions in the city continue their positive trajectory.  The defendant does not articulate any particular prejudice that would be caused by a delay in his sentencing until in-person proceedings can be conducted, aside from the stress he asserts is caused by the continued pendency of this matter.  Nor does it appear that any third parties or victims would be prejudiced by a delay in sentencing.  As a result, a delay of sentencing until it can be held in open court would not result in "serious harm to the interests of justice."

Finally, the Government notes that the sentencing in this case presents a number of complex issues and potential factual disagreements to be resolved, further supporting an in-person, as opposed to video conference, sentencing proceeding.  As the Court is aware from the November 2019 trial of co-defendant Mark Scott, this case involves a long-running and sophisticated white collar scheme to sell a fraudulent cryptocurrency and launder the resulting fraud proceeds.  Adding to the complexity, after cooperating with the Government for a substantial time period, the defendant committed substantial violations of his cooperation agreement, leading the Government to decline to submit a Section 5K1.1 letter in this case.  Unsurprisingly, the Guidelines calculations set forth in the PSR, applicable to the five counts of conviction, are quite involved, spanning four pages and 25 paragraphs.  Moreover, the defendant submitted to the Probation Office various challenges to those Guidelines calculations, along with challenges to certain factual recitations in the PSR, which will need to be resolved by the Court as part of sentencing.  Indeed, it is possible that a hearing may be needed to resolve some of those disputes.  Finally, this case poses complicated issues related to forfeiture and restitution, which will also require resolution by the Court at sentencing.

In short, because there are no specific reasons that sentencing in this case cannot be further delayed without serious harm to the interests of justice, and because the complex issues presented here support an in-person sentencing proceeding, the Government respectfully requests the Court adjourn the sentencing to the earliest available date on which the Court anticipates that an in-person sentencing proceeding can be conducted, and direct that the defendant's sentencing submission be submitted two weeks prior to that date, and the Government's sentencing submission be filed one week prior to that date.

Respectfully submitted,

AUDREY STRAUSS
Acting United States Attorney

By:      /s/
Christopher J. DiMase / Nicholas Folly
Assistant United States Attorneys
(212) 637-2433 / 1060
Julieta V. Lozano
Special Assistant United States Attorney
(212) 335-4025

cc:    Marc Weinstein, Esq., and Dina Hoffer, Esq.

# **EXHIBIT A**

K6BKBRAC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

       v.                                    18 CR 283 (GHW)
                                              Telephone Conference

LOUIS BRAVO,

            Defendant.

------------------------------x

                                              New York, N.Y.
                                              June 11, 2020
                                              3:30 p.m.

Before:

                     HON. GREGORY H. WOODS,

                                  District Judge

                          APPEARANCES

GEOFFREY S. BERMAN,
    United States Attorney for the
    Southern District of New York
EMILY ANNE JOHNSON
    Assistant United States Attorney

DAVID PATTON
FEDERAL DEFENDERS OF NEW YORK
    Attorney for Defendant
BY: JENNIFER ELAINE WILLIS
    TAMARA LILA GIWA

1       (The Court and all parties appearing telephonically)

2       THE COURT:  First, let me ask counsel for the United
3 States, the defendant, and the defendant himself if each of you
4 have video capability.  I cannot see any of you, but I don't
5 know if that's because you have your video disabled or there's
6 some other reason.

7       Counsel for the United States, do you have video
8 capability where you are?

9       MS. JOHNSON:  I should.  Hold on, let me -- I don't
10 see anyone on video, but let me check to see if I can make this
11 work.

12      THE COURT:  Thank you.

13      I haven't turned mine on, yet, because I don't know
14 that everyone has access.

15      Counsel for defendant, do you have access to video on
16 your computer?

17      MS. GIWA:  I do have access to video.  However, my
18 client, Mr. Bravo, does not.  He currently only has a landline,
19 and so that's the reason I just didn't connect by video.

20      THE COURT:  That's fine.

21      So, I understand that Mr. Bravo does not have video
22 availability, and, as a result, that the proposal is that we
23 proceed by teleconference exclusively.  We'll proceed with that
24 understanding.

25      I will also keep my video line off given that, as I

1  understand it, the defendant does not have access to video
2  capability.
3             Let me just say a few words at the outset of today's
4  conference.
5             First, you should conceive of this conference as if it
6  was happening in the courtroom to this extent; namely, any
7  member of the public or press is welcome to listen into these
8  proceedings.  The information related to this conference was
9  made publicly available by me.
10            I'm also going to ask that each of you, to the extent
11 that you can, please keep your phones on mute at all times when
12 you are not speaking during this conference.  That will help us
13 to keep a clear record of the conference.
14            Last, I'm going to ask you each to please state your
15 names each time that you speak during the course of this
16 conference.  That will be helpful, so that the court reporter
17 and I know who it is that's speaking at any time.  Please do
18 that regardless of whether or not you've spoken previously.
19 Again, that will help us to keep a clear record of today's
20 conference.
21            I should also note that, as you have heard, we have a
22 court reporter on the line for this conference.  He is
23 transcribing the conference.  I'm asking him to let us know if
24 he has any difficulty in hearing or understanding anything that
25 I or any of you may say during the course of the conference.

1  So, please don't be surprised if he does speak up to ask you to
2  do something, so that he can hear you or understand you more
3  clearly.  If he does, please do what he asks, so that we can
4  keep a clear record of the conference.
5           Because we have a court reporter on the line, I'm
6  ordering that there be no other recordings or rebroadcasts of
7  any portion of this conference.
8           So, because we're in the midst of the COVID-19
9  pandemic, I'm conducting this proceeding pursuant to the
10 authority provided by Section 15002 of the CARES Act and the
11 standing order issued by our chief judge pursuant to that act,
12 counsel appearing before me by telephone, what could have been
13 a videoconference call, but for lack of that capacity by the
14 defendant.  The defendant is participating by telephone in the
15 conference.
16          So, let me just ask each of the parties if you can
17 hear me clearly.
18          First, counsel for the United States, can you please
19 identify yourself for the record, and can you please let me
20 know if you can hear me clearly.
21          MS. JOHNSON:  Yes.  Good afternoon, your Honor.  This
22 is Emily Johnson, for the government, and I can hear you
23 clearly.
24          THE COURT:  Good.  Thank you.
25          Counsel for defendant, can I ask you to identify

K6BKBRAC

1   yourself for the record, and would you please tell me if you
2   can hear me clearly?
3            MS. GIWA:  Federal Defenders of New York, by Tamara
4   Giwa.  And, yes, your Honor, I can hear you clearly.
5            THE COURT:  Good.  Thank you.
6            Mr. Bravo, I understand that you're on the line.  Can
7   you hear me and the others on the phone clearly?
8            THE DEFENDANT:  Yes, your Honor, I can hear everyone
9   clearly.
10           THE COURT:  Good.  Thank you.
11           So let me ask each of you to please let me know
12  immediately if you have any difficulty hearing me, or an
13  attorney, or any other person during the course of this
14  conference.
15           Now, as I said earlier, I'm going to be calling on
16  each of you during these proceedings.  When I do, you should
17  identify yourself by name for clarity of the record.  Also, you
18  should not interrupt each other or me during the conference.
19  If we interrupt each other, it's difficult to create an
20  accurate transcript of the proceedings.  I'll give each of the
21  attorneys an opportunity to speak during the course of the
22  conference.
23           This is a status conference for this case.  I
24  recounted some of the relevant procedural history during my
25  exchange of my most recent set of orders.  I scheduled this

1  conference as a status conference some time ago, and the
2  principal purpose of today's conference is to discuss some
3  scheduling.
4          Now, here, because the principal purpose is to discuss
5  scheduling, I think that we could proceed without the
6  defendant's presence, but I'd like to make sure that the
7  defendant has consented to proceeding in this conference by
8  remote means.
9          So, counsel for defendant, can you describe for me
10 your communications with the defendant regarding his
11 willingness to consent to proceed here by remote means?
12          MS. GIWA:  Your Honor, this is Tamara Giwa.
13          I've spoken with Mr. Bravo about proceeding remotely,
14 given the state of the world right now.  He is eager to resolve
15 this matter as soon as possible, and so he consents to
16 proceeding remotely.  And I did fill out the consent form, and
17 I have sent that to your chambers, your Honor, indicating that
18 Mr. Bravo consents to going forward.
19          THE COURT:  Good.  Thank you.
20          And, counsel, do I take it that from your
21 communications with Mr. Bravo, that you understand that he
22 knows that he has the right to appear at this proceeding in
23 person and that he's voluntarily consenting to proceed
24 remotely?
25          MS. GIWA:  This is Tamara Giwa.

|   |   |
|---|---|
| 1 | Yes, your Honor, I do believe that to be correct. |
| 2 | THE COURT:  Good.  Thank you very much. |
| 3 | So, let me ask counsel for defendant:  Have you |
| 4 | provided the consent form to your client?  Has he seen it |
| 5 | before? |
| 6 | MS. GIWA:  Your Honor, he has not seen the form. |
| 7 | Mr. Bravo is having some technological issues now.  Because he |
| 8 | doesn't have a cell phone, he just doesn't have a way to |
| 9 | receive email, and so I have reviewed it with him, but he has |
| 10 | not actually seen the form itself. |
| 11 | THE COURT:  That's fine. |
| 12 | So, I understand that the defendant and his counsel |
| 13 | were not able to work together to develop a written way of |
| 14 | consenting to his presence, and that the defendant has not seen |
| 15 | the written consent form that counsel has provided to the |
| 16 | Court.  I'm not going to ask Mr. Bravo if I can sign it on your |
| 17 | behalf because you haven't seen the document. |
| 18 | I understand, however, based on the proffers by |
| 19 | counsel, that the defendant is aware of his right to be present |
| 20 | for purposes of this conference and that he knowingly and |
| 21 | voluntarily waived his right to be present here.  I find that, |
| 22 | given the constraints that counsel for defendant has proffered |
| 23 | here, it was not reasonably possible for counsel to obtain a |
| 24 | written waiver of the defendant's right to be present for this |
| 25 | proceeding. |

1          I also find that, for purposes of this conference,
2     videoconferencing capacity or capability was not reasonably
3     available in this instance.  That's because the defendant
4     himself is on a landline, as proffered by counsel, and, as a
5     result, the videoconferencing capability is not accessible to
6     him.  So, with that in mind, let's proceed.
7          Counsel, I scheduled this as a status conference,
8     after receiving the parties' exchange of letters about a
9     potential plea today.  Let me hear from each of the parties
10    about your views as to the status of the case and appropriate
11    steps for us to take in the case going forward.
12         Let me hear first, if I can, from counsel for the
13    United States.  Counsel?
14         MS. JOHNSON:  Yes, your Honor.  This is Emily Johnson.
15         Based on my communications with defense counsel, I
16    understand that Mr. Bravo intends to accept the plea agreement
17    that the government has extended in this case, which would be
18    to plead guilty to one count of wire fraud.  However, in terms
19    of when that plea could occur, I think the parties have
20    different views.
21         Under the CARES Act, a felony plea can be conducted
22    over video or telephone if there's a finding by the Court that,
23    for a specific reason, the plea cannot be further delayed
24    without serious harm to the interests of justice.  And while I
25    understand that Mr. Bravo would like to move the case along,

and I'm certain that counsel and the Court have similar interests, the government's view is that it is not a specific reason that a remote proceeding should occur in this case. Mr. Bravo is out on bail, and we would certainly like to schedule the change of plea proceeding, but our view is that it should be conducted in person once the court opens for personal appearances.

As an alternative, I understand that some judges in the courthouse have taken to ordering the PSR when a defendant intends to plead guilty, and then scheduling a combined plea and sentencing for a later date, which could accommodate moving the case along more quickly without the concerns that the government has about whether the CARES Act would be satisfied in this case by having a remote proceeding.

THE COURT:  Thank you.

Let me hear from counsel for defendant.  Counsel?

MS. GIWA:  Your Honor, Tamara Giwa.

Counsel for the government, I think, just accurately states that there is a difference in the view as to when this plea should occur.  As I stated earlier, Mr. Bravo is eager to resolve this matter.  The case has been pending and hanging over his head for quite some time.  We would like to see it come to some end.

It is unclear, at this point, when we will actually be in a courtroom in person, and, so, given the uncertainty of

1     that, Mr. Bravo would, as I said, like some kind of resolution.

2              Additionally, your Honor, Mr. Bravo has a number of
3     significant medical issues, and this pending matter is keeping
4     him here and keeping him from getting some medical treatment
5     that he needs.  And, so, for reasons that are sort of personal
6     to him and the great desire to put this matter behind him,
7     Mr. Bravo would like to go forward as soon as possible.

8              We would have no objection to the Court ordering a PSR
9     and then having a combined plea and sentencing at a later date,
10    though, if the court does not reopen soon, then we would,
11    again, ask to have the change of plea hearing and the
12    sentencing occur remotely as well.

13             THE COURT:  Thank you.  That's helpful, counsel.

14             Let me say a few brief words.

15             First, counsel for defendant, do you take issue with
16    the government's statement regarding the applicable legal
17    standard under the CARES Act for me to conduct a plea by remote
18    means?

19             MS. GIWA:  No, your Honor.  This is Tamara Giwa.

20             That's also my reading of the CARES Act.

21             THE COURT:  Good.  Thank you very much.

22             So, counsel, I think I share all of your views
23    regarding the benefit of entering a prompt plea here.  However,
24    based on the proffers by counsel here, I can't find serious
25    harm to the interests of justice in this case to permit me to

1    conduct the plea by remote means.  I understand Mr. Bravo's
2    reasonable preference to begin the process of putting this case
3    behind him.  I understand that there may be some medical
4    conditions that may lie behind that desire.  At the same time,
5    as counsel for the United States has pointed out, Mr. Bravo is
6    not currently in custody, and the delay attendant to conducting
7    this plea in person is not of such a nature, that I can make
8    the requisite finding under the statute.
9         So, I don't believe that I can conduct a remote plea,
10   at least not based on the facts that have been presented to me
11   so far in support of the application for me to conduct a remote
12   plea hearing.
13        There are several options for us to move forward.  Let
14   me outline what some of those are.
15        One of them has been described; namely, the suggestion
16   that I schedule a PSR and conduct the plea and sentencing on
17   the same date.  That's not my preference, but I'm happy to
18   engage in a further discussion of it.
19        A second option is for us to see if I can refer this
20   plea to the magistrate judge for an in-person plea in
21   magistrate court or before the Part I judge if the parties are
22   able and willing to come to the courthouse for that purpose.
23   If I can see if the magistrate judge can take his plea in the
24   near term, that may be an option.  I don't know whether I'll be
25   able to accomplish that, however.

1    That leads us to option three, which is for me to
2 schedule a plea in person at an early date. My hope and
3 expectation is that the courthouse will be available for this
4 type of proceeding before me in person in the courthouse by
5 July. I would propose, therefore, that we put on the calendar
6 a firm date for Mr. Bravo to come in for an in-person plea.
7 And looking at my calendar, the date that I would most likely
8 propose would be July 21 at 3:30, with the hope and expectation
9 that the courthouse will be open for regular operations by
10 then. Of the three options that I've described, that's my
11 preferred option, but, again, I'm happy to hear from the
12 parties about your preferences regarding appropriate
13 approaches.
14    I should say that even under the third option, to the
15 extent that I'm able to convene the parties earlier than that
16 in the courthouse consistent with the court's COVID-19
17 precautions, I would do that as soon as I was able to do so
18 consistent with those precautions, but in the option three that
19 I've just described, the 21st would be our backstop date, the
20 date on which we would plan to conduct the plea.
21    So, let me hear the parties' views about each of those
22 three options.
23    Counsel, first, for the United States?
24    MS. JOHNSON: Hi, yes, your Honor. This is Emily
25 Johnson again.

1           I'm agnostic among those three options.  I am happy to
2   defer to the Court and the defendant for whichever option is
3   most convenient and preferable.  I am still in New York, and
4   I'm actually returning to the office next week, so the
5   in-person proceedings will not be a problem from the
6   government's end.
7           THE COURT:  Good.  Thank you.
8           Counsel for defendant, what's your view?
9           MS. GIWA:  Your Honor, this is Tamara Giwa.
10          I would like an opportunity to just discuss this with
11  Mr. Bravo.  Would your Honor consider allowing the parties to
12  submit a joint letter, maybe tomorrow or Monday, with our
13  position after we've had a chance to discuss it?
14          THE COURT:  Thank you.  Yes, I'm happy to do that.
15  I'm happy to permit the parties to consider it.
16          What I'd like to do, however, is to put in place a
17  backstop, what I'll describe as a default rule here, one which
18  could be modified by the parties upon request via letter.  My
19  proposal for the establishment of that default rule would be
20  that the next status conference, which we would expect to
21  schedule as a change of plea hearing, would be on July 21, at
22  3:30, and we would, again, establish that as the default, and
23  to the extent necessary, counsel for the United States, I would
24  entertain an application to exclude time through that date.
25          So, I propose that as a backstop.

Case 1:17-cr-00556-ER   Document 16   Filed 07/07/20   Page 18 of 20      14
K6BKBRAC

1           Counsel for defendant, what's your view?

2           MS. GIWA:  Your Honor, that's fine.  That makes sense.

3           THE COURT:  Good.  Thank you.

4           So, I'm scheduling a status conference for July 21, at
5    3:30 p.m.  That is subject to modification based on the joint
6    submission that I expect from the parties.  Please do let me
7    know about each of those alternatives.  If the magistrate court
8    is available for an in-person plea next week, that's an option
9    that the parties might pursue.  I, frankly, don't know whether
10   magistrate's court is open to do pleas in person right now.  It
11   may be that the parties will be able to make inquiries in the
12   interim to find out if that's a feasible option for sometime
13   next week, when counsel for the United States will be back in
14   the office.

15          So, I'll issue an order to that effect.

16          Counsel for the United States, can you tell me where
17   we are with respect to the Speedy Trial Clock at this point?

18          MS. JOHNSON:  Yes, your Honor.  This is Emily Johnson
19   again.

20          Time has been excluded through today's status
21   conference.  The government would move to exclude time from
22   today until July 21st.  And the basis for that exclusion, the
23   government would submit that the chief judge of the court has
24   issued a number of standing orders related to the COVID-19
25   pandemic, and for all of the reasons stated in the chief

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1  judge's orders, the government would submit that the exclusion
2  of time is in the interests of justice and outweighs the
3  defendant's interests and the public's interests in a speedy
4  trial at this time.
5           THE COURT:  Good.  Thank you.
6           Counsel for defendant, what's your view?
7           MS. GIWA:  This is Tamara Giwa.
8           Your Honor, the defense has no objection to the
9  exclusion of time.
10          THE COURT:  Good.  Thank you very much.
11          I will exclude time from today until July 21, 2020.
12 After balancing the factors specified in 18, United States
13 Code, Section 3161(h)(7), I find that the ends of justice
14 served by excluding such time outweigh the best interests of
15 the public and the defendant in a speedy trial because of the
16 fact that we're in the midst of a global pandemic that has a
17 significant impact on our ability to prepare for trial and, in
18 this instance, to conduct a potential change of plea
19 proceeding.
20          Anything else that we need to take up here?
21          First, counsel for the United States?
22          MS. JOHNSON:  No, your Honor.  Thank you.
23          THE COURT:  Good.  Thank you.
24          Counsel for defendant?
25          MS. GIWA:  No, your Honor.  Thank you so much.

K6BKBRAC

1          THE COURT:  Good.  Thank you, all.

2          THE DEFENDANT:  Thank you.

3                              * * *

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300